DOLLOWAY *v.* TURRILL, 26 Wend. 383—403.

Reported in S. Ct. 17 Wend. 426.

### *Libel; What are Questions for Jury.*

THE libel complained of in this case charged Turrill, the plaintiff below, who was first judge of the county of Oswego, and as mentioned in the libellous publication, addressed " to the public," then " a candidate for the office of member of Congress" with having put his official signature as first judge to a statement in writing in the form of an affidavit, stating under his hand that the person who signed it was *duly sworn*, when, in truth, the said person was not sworn at all ;" it also asserted that the paper thus certified " was intended to prevent the appointment of the present collector of Oswego, and that T. made himself, secretly, as he supposed, busy in concerting measures to produce that result.   It then continued : " We leave the public to judge under the circumstances whether Judge Turrill has not committed a gross violation of his oath of office, for the purpose of ruining a man whom he has long endeavored to injure, although he belongs to the same political party with himself."   This publication was signed by the defendant and some others, and published in a newspaper Oct. 25th, 1832. The plaintiff in his declaration stated that he was first judge &c. at the time the alleged act took place and the defendant *intending to cause it to be believed that he, in his office of first judge, had conducted himself in a corrupt and criminal manner*, and was destitute of official purity, and judicial integrity; caused the publication to be made, alleging that it was false, scandalous, &c.

The defendant pleaded the general issue, and accompanied it with a notice that he would prove on the trial of the cause the facts as set forth in the publication; adding, " And that the publication was made with good motives and for justifiable ends: to wit: to inform the electors of the congressional district of the facts detailed therein, and that all the matters alleged in the declaration to be libellous, were true."

The cause was tried in Dec. Ter. 1838, a second time before Gridley, circuit judge, at the Oswego circuit, when after

the evidence of publication, and that the defendant was worth $30,000, the plaintiff rested.

The defendant then offered to prove the facts specified in his notice; to which proof the plaintiff objected, "On the ground of the insufficiency of the notice, and also that the facts stated in the notice, in regard to the charge as to the affidavit, did not amount to a justification of that charge." The evidence was rejected. The defendant then offered to prove "That the plaintiff did the several acts specified in the publication corruptly and with the intent and motive alleged in the declaration to be charged against him—which was also objected to and rejected. The counsel for the defendant then requested the judge to charge the jury that they *had a right to decide in what sense the words in the publication were used;* that is, whether they imported a charge of *inadvertence* on the part of the plaintiff in certifying that he had sworn the person to the affidavit, when he had not administered any oath ; or whether they imported *official corruption* in the plaintiff; and if the jury should find that they were used in an innocent sense, then that they were not actionable. But the judge declined so to charge; and told the jury, "That any written or printed publication charging an individual with a want of integrity or with corruption in office was actionable ; that the act here charged was one which not only would imply a want of integrity, but amount to an unequivocal charge of official corruption, and which if true would render him unworthy of his judicial station, and of the suffrages of his fellow citizens for that for which he was then a candidate ; that the Supreme Court had already passed on the construction of the libellous article then in question in accordance with these views and had determined that the paper was not susceptible of an innocent construction, but was libellous in its character, and it would therefore be their duty so to consider it in their verdict. The only other question," he further said, necessary for them to consider was whether the plaintiff had been guilty of publishing the libel in question, and left that to them upon the evidence. The jury returned a verdict for the plaintiff with $800 damages. The decisions upon the evidence and the charge of the judge being excepted to, the defendant upon his bill of

exceptions, moved the Supreme Court for a new trial, which was denied. The opinion of the court was delivered by Nelson, Ch. J., who, after stating that the fact of publication was sufficiently proved, says : " After this it was entirely competent to admit evidence of the circulation in other papers besides those specified in the declaration. A party putting a libel in circulation is answerable for the extent that may be given to it. The notice did not amount to a justification. The import of the libel was determined by this court on the former motion for a new trial, 17 Wend. 426 ; and it has now been tried in conformity to the principles there laid down. It is impossible to interfere with this verdict without overruling the views there taken, of the correctness of which we have seen no reason to doubt." The defendant then sued out a writ of error to this court.

The Court of Errors *held* that the charge of the judge as *matter of law,* that the *publication was libellous and not susceptible of an innocent construction* was erroneous, and that, instead thereof, the question, *in what sense the words were used?* should have been submitted to the jury.

The Chancellor read an opinion in favor of an affirmance : (not published.) Senator Root having maintained in an opinion read by him, that the provision in the Constitution that " *In all prosecutions* or indictments for libel, the truth may be given in evidence to the jury," extended to civil actions also ; and Senator Verplanck, intimating that his impressions concurred with that opinion, the Chancellor protested against the decision of the case upon grounds not presented on the argument, and upon which the plaintiff below had not been heard by counsel. He expressed his surprise that such a construction should be attempted to be given to the constitutional provision, and would " venture to say that no lawyer had ever before supposed it extended to *civil suits ;*" that to extend it to them would operate unfavorably to the defendant ; that at common law the truth of a libel, be the motive ever so bad or the end ever so unjustifiable, if the facts are properly pleaded or set out in a notice, may be given in evidence in civil suits for libel ; but that if the provision in the Constitution should be extended to civil suits, the

truth will no longer be a justification, unless published, with "good motives and justifiable ends."

Judgment *reversed* (it would seem only on the ground that the jury had a right to pass upon the *sense* of the words,) by a vote of all the members present for *reversal* except the Chancellor and three senators who voted for affirmance.

---

☞ The constitutional provision above referred to, is *amended* by the present Constitution of the state of New York, to read as follows : Const. of 1846, art. 1, sect. 8, " In all (*criminal*) prosecutions or indictments for libels, the truth may be given in evidence to the jury ; and if it shall appear to the jury that the matter charged as libellous is true and was published with good motives and for justifiable ends, the party shall be acquitted ; and the jury shall have the right to determine the law and the fact."